109 N.J. Super. 257 (1970)
263 A.2d 139
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH MUSTACCHIO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1969.
Decided March 13, 1970.
*260 Before Judges CONFORD, COLLESTER and KOLOVSKY.
Mr. Kenneth J. McGuire argued the cause for appellant (Messrs. Stein, Bliablias & Goldman, attorneys).
Mr. Joseph A. Falcone, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, County Prosecutor, attorney).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant Joseph Mustacchio and one Anthony D'Agostino were indicted for the crime of armed robbery, in violation of N.J.S.A. 2A:141-1 and 2A:151-5. Following a jury trial Mustacchio was found guilty and D'Agostino acquitted. Mustacchio appeals.
The indictment followed the holdup of a drug store in Bloomfield on the evening of April 4, 1967. Two men, one armed with a shotgun, entered the pharmacy and robbed David Goffman, the proprietor, of approximately $289. William Bell, who was making a phone call in the public telephone booth in the store, witnessed the crime. While the man with the shotgun covered Goffman, the other man, who kept his right hand in his coat pocket throughout the robbery (apparently giving the impression that he was armed), removed the contents of the cash register. He then made Goffman go to the rear of the store and produce a metal box containing more cash. After taking the money he cut the telephone wires. The man with the shotgun ordered Bell to remain in the booth until his partner and Goffman returned. Thereafter, both Goffman and Bell were forced to lie down on the floor until the robbers fled. The police were called and given a description of the two men. *261 Mustacchio and D'Agostino were identified as the robbers from police photographs and, following their arrests, were identified by the eyewitnesses separately at lineups conducted by the police. At the trial Goffman and Bell again identified the two men  D'Agostino as the man who carried the shotgun and Mustacchio as the person who took the money. Both Mustacchio and D'Agostino asserted the defense of alibi.
The principal ground of appeal urged by Mustacchio is that the admission of testimony of his pretrial identification by Goffman and Bell was error because it violated his rights under the Sixth and Fourteenth Amendments. At the trial, when the State was about to offer testimony by Goffman that he had identified Mustacchio and D'Agostino at lineups conducted by the police, defendant objected, arguing that evidence as to the lineup identification was inadmissible because he had not been represented by counsel at the lineups as called for by United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and requesting a hearing to determine whether the in-court identification to be made by Goffman was tainted by the allegedly invalid lineup identification. The court overruled defendant's objection and denied his request for a hearing, holding that the rule of Wade requiring the presence of counsel at a lineup did not apply to the lineups in this case which took place some two months before June 12, 1967, the date Wade was decided.
Defendant argues here, as he did below, that he was denied his Sixth Amendment right to the assistance of counsel at the lineups and that it was unfair not to exclude the pretrial identification testimony because the confrontations took place prior to the effective date of Wade. The argument is without merit. In Stovall v. Denno, 388 U.S. 293, 300, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the court held that an accused's right to counsel at a lineup mandated by Wade did not apply to lineups conducted prior to June 12, 1967. We are also satisfied that admission of the out-of-court identification did not, as asserted by defendant, constitute *262 a violation of the rulings of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).
Defendant also contends that the trial court erred in denying the request he says he made for a preliminary hearing and determination by the court "regarding the fairness of the totality of the circumstances surrounding such pretrial identification." The record furnishes no support for the claim that he had made such a request. Defendant's argument for a voir dire hearing was based solely on his contention that Wade should be given retroactive effect, e.g., "What difference does it make when the lineup was conducted * * * The element of time should not affect [defendant's] particular right." His request for a hearing was limited to a request that it be held to determine whether the witness' proposed in-court identification of defendant was tainted by the lineup identification, assertedly invalid because defendant was not then represented by counsel. Absent a request that the trial court hold a preliminary hearing and rule with respect to the alleged unfairness of the lineup procedures, the lack of such a hearing affords no basis for reversal.
Defendant's final contention with respect to the pretrial identifications is that they were so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. This point was not raised below, defendant relying instead on his cross-examination of the State's witnesses and his own testimony to impugn, for the benefit of the jury, the weight of the pretrial identification testimony. Accordingly, we may consider the argument only if the introduction of the pretrial identification qualifies as plain error, R. 2:10-2, the test being whether the error complained of was of such a nature as to have been clearly capable of producing an unjust result. State v. Lowery, 49 N.J. 476, 484 (1967).
*263 A pretrial identification, if made under circumstances precluding unfairness or unreliability, is admissible where the person making the prior identification is in court as a witness. State v. Matlack, 49 N.J. 491, 497 (1967). The validity of a claim that a pretrial identification is so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a violation of due process must be evaluated upon the totality of the circumstances surrounding the confrontation. Ibid., at 498; Stovall v. Denno, supra, at 302, 87 S.Ct. 1967: State v. Mars, 107 N.J. Super. 36, 39 (App. Div. 1969), certifi. den. 55 N.J. 319 (1970).
In the instant case both Goffman and Bell were able to observe defendant at the time of the robbery, and separately identified him from photographs before his arrest and subsequently at lineups conducted by the police  all within three days after the crime was committed. Both eyewitnesses positively identified defendant at the trial. We find no plain error in the admission of the in-court or out-of-court identifications.
We proceed to consideration of the other grounds of appeal.
Defendant argues error in the denial of his motion for a mistrial, based on alleged praise of a State witness' testimony by police officers, during an intermission of the trial, within the hearing of some of the jurors. We conclude that based upon the court's investigation of the incident with all involved, including the jurors in question, its denial of the motion was justified.
Complaint is made that the court should have granted a mistrial when one of the witnesses supporting defendant's alibi defense was improperly questioned by the State concerning a criminal record for which the prosecutor had no foundation. We deem the impropriety to have been adequately neutralized by appropriate instructions by the court to the jury.
*264 We find no mistaken exercise of discretion in the court's restricting cross-examination of a State witness to the scope of what his testimony was on direct examination, in certain instances complained of by defendant. Moreover, we find no error in restricting cross-examination of a police detective concerning investigation of an alleged wave of drug store hold-ups at about the time of that here involved.
Finally, error is assigned to the introduction by the State of evidence of defendant's prior criminal convictions upon his cross-examination. The argument is frivolous under the settled law of this State.
Affirmed.
CONFORD, P.J.A.D. (dissenting).
I am constrained to dissent on the single ground that the circumstances attending the lineup identifications were such as to have called for a voir dire hearing and preliminary determination as to fairness by the trial judge. I read the record, contrary to my colleagues, to show that defendant did make the point at trial and thus preserved his right of appellate review thereon.
Defendant was one of two persons (the other, one D'Agostino) tried for the hold-up of Goffman's pharmacy in Bloomfield the evening of April 4, 1967. D'Agostino was acquitted. Goffman and one Bell, who was making a phone call in a booth in the store, witnessed the crime, and both identified defendant at lineups and in court. (They both also identified D'Agostino at lineups and in court.) D'Agostino was identified as carrying a gun; defendant as not, but as having taken the money. According to the testimony of Goffman and Bell, respectively, before the conducting of the lineups Goffman identified defendant from police photographs; Bell, shown the same pictures, could not. One of several detectives who conducted the investigation testified to precisely the reverse. At trial Bell was able to identify defendants' photos. Goffman had the opportunity to make a good observation of defendant at the scene of *265 the crime, having been close to him both at the cash register in the store and in a back room where he turned over additional moneys to him. Bell, however, had only seconds to observe defendant before being commanded to lie on the floor face down, along with Goffman, while the culprits fled.
In separate lineups at police headquarters, about 10 or 15 minutes apart, on April 7, 1967, Goffman and Bell each identified defendant immediately from among four other men, all Caucasian, as is defendant. However, defendant testified that each of the others was dressed in jacket, shirt and tie, and was clean shaven, while he, stationed in the middle position, wore a T-shirt and sweater, and was unshaven. Defendant testified that on April 4, 1967 he was 5 foot 8, weighed 200-210, had dark brown hair, a bandage over a discolored eye, a discolored nose and a bandaged right hand, the latter conditions stemming from an accident sustained prior to April 4. The bandages and discoloration still existed April 7.
Of the other men in the lineup, according to defendant, one weighed 160-175 and had a very white complexion (defendant's is dark); another was much younger and much smaller than defendant, with fair complexion and sandy hair; another was slender and six inches taller than defendant, with blond hair; and the last, a detective, was 5 foot 8, but of medium build, light complexion and younger-looking than defendant.
Bell testified that at the lineup all the men were about the same height and the same build, and all were wearing "plain civilian clothes." They more or less fit the description he had given of the suspects to the police (but the police testified Bell was unable to give them a description of the man without the gun, only the other). Goffman could not remember the appearance of the other participants at the lineup. The only other testimony as to their appearance was by a detective, on cross-examination, that one of them was 5 foot 10 or 11 and weighed 180-190.
*266 Goffman testified that the man without the gun (defendant) was 5 foot 6 or 7 and very heavy set. In his original description of that man to the police, he had described him as 5 foot 11. He also testified that that man kept his right hand in his pocket throughout the course of the robbery.
In making their in-court identifications both Goffman and Bell were positive, Goffman "extremely" so.
Both defendant and D'Agostino supplied well corroborated alibis at trial.
At the trial, as the State was about to offer testimony of pretrial identification of defendants by Goffman, defendant, after referring to anticipated "lineup" testimony, objected to any of the "present testimony dealing with in court identifications" until after a hearing out of the presence of the jury to determine whether the circumstances of any pretrial identifications (1) tainted the in-court identification under the criterion of United States v. Wade, 388 U.S. 218, 240-241, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and (2) violated defendant's "Fifth Amendment" [but, from the subsequent context, clearly intending "Sixth Amendment"] rights.
The colloquy on the motion (out of the presence of the jury), after statement of the grounds of the motion as aforesaid, dealt entirely with the legal question as to whether Wade, generally, applied to pretrial identifications made in fact before the date of the Wade decision (June 12, 1967). There was no discussion of the testimony to be adduced. The court, without explanation beyond saying that the matter had been ruled upon both by the United States Supreme Court and the Supreme Court of New Jersey, denied the motion for a voir dire hearing.
I note, preliminarily, that when a Wade-type problem is anticipated and the defense moves in advance of proofs for a voir dire hearing, the court should elicit from both sides their understanding (or intention) as to the general character *267 of the pretrial and in-court identification proofs expected to be adduced, and also, from the defendant, whether his objection will be to admissibility of the evidence of pretrial identifications, or of in-court identifications, or both. Only in that way, generally speaking, can the court make a sound judgment as to whether a sufficiently colorable case of illegal or unfair pretrial identification procedures, or as to tainting of the in-court identification, is made out, within the criteria of the controlling cases, cited hereinafter, as to justify the preliminary hearing out of the presence of the jury. Had the trial court done so here, it would have learned, as indicated hereinafter, that such a hearing and preliminary determination was required because of the nature of the anticipated testimony relating to the issue of unfairness of the lineup.
I agree with the majority in dismissing the argument made below and here that the lineups were illegal under Wade because defendant was not attended by counsel. In Stovall v. Denno, 388 U.S. 293, 300, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), decided the same day as Wade, the court squarely held that the requirement of counsel at a lineup declared in Wade would not apply to lineups conducted before the date of the Wade decision. See also State v. Matlack, 49 N.J. 491, 499 (1967), cert. den. sub nom. Matlack v. New Jersey, 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967). I also concur with the majority that there is no merit in defendant's argument that, aside from Wade, his lineup identification without attending counsel constituted a deprivation of counsel within the authority of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). However, Stovall apparently ruled by implication that the expressions in Wade and in Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (also decided June *268 12, 1967), as well as in Stovall  that overall unfairness in pretrial identification confrontations, apart from absence of counsel, could fatally taint ensuing in-court identifications (deprivation of due process)  were not necessarily confined to post-indictment confrontations.
Stovall involved a pretrial identification confrontation under what the court indicated might normally have been unfair circumstances (388 U.S., at 301-302, 87 S.Ct. 1967; and see Wade, 388 U.S., at 234, 87 S.Ct. 1926), but the procedure was held justified in the particular case because of the uncertainty of survival of the only witness of the crime. 388 U.S., at 302, 87 S.Ct. 1967. The court did not allude to the fact that the confrontation was pre-indictment  a factor which would of itself have sufficed to dispose of the argument of unfairness if antecedence to indictment was determinative. See also State v. Woodard, 102 N.J. Super. 419, 424-425 (App. Div. 1968), certif. den. 53 N.J. 64 (1968), cert. den. sub nom. Woodard v. New Jersey, 395 U.S. 938, 89 S.Ct. 2004, 23 L.Ed.2d 453 (1969).
I consequently here conclude that the chronology of the pretrial identification procedures in relation to the date of the indictment is not dispositive of defendant's contentions on unfairness and taint.
The majority appears to rule out the appellate claim of right to voir dire hearing on unfairness in the circumstances attending the out-of-court identifications and alleged ensuing taint of the in-court identifications on the basis that the point was not made below  that defendant argued only the right to counsel during such identification. My own examination of the transcript shows the former point was in fact made, although obvious stenographic errors in transcription becloud it. Edited to correct the reporter's errors, the transcript shows that when the State asked the victim of the crime whether he ever subsequently saw the men who robbed him, the defense objected, and among other things counsel said:
*269 At any rate, I would like to interpose my objection of the present testimony dealing with in court identification until your Honor has had an opportunity to review in a hearing out of the presence of the jury the circumstances surrounding the pretrial identification of both defendants to determine whether or not what will [not] be elicted by in court identification [.] [This] is totally independent of or has some basis or some independency from what was done at some police station in Bloomfield or elsewhere, and further more, whether or not during the course of the pretrial identification, the accused in this instance my client * * * were afforded their rights under the amendment, the Fifth [sic.] Amendment of the United States Constitution. [Italics to show additions by court]
To me the implication from the foregoing, and particularly what follows the adverb "further more," is that counsel was urging both taint from unfairness of circumstances attending the out-of-court identifications and a right to a voir dire hearing on the point, on the one hand, and the illfounded contention of retroactivity of Wade in respect of the right to counsel during identification, on the other. Because counsel was not as clear as he might have been, the trial judge unfortunately saw only the second point, and the ensuing colloquy was confined thereto.
Since we are dealing with a matter of due process enunciated by the United States Supreme Court I think we should not indulge in a narrow and grudging reading of the scope of the defendant's trial position. The right of preliminary court determination of unfairness is incontestible here on the proofs.
The sharp dispute in the testimony concerning the alleged contrasting appearance of defendant vis-a-vis the other subjects standing with him in the lineup at which he was identified in the Bloomfield police station particularly mandates a remand of this matter to the judge who presided at the trial for findings thereon, as to the unfairness of the out-of-court identifications on the totality of the circumstances, and, if necessary, as to any taint of the in-court identifications. Clearly, if defendant's version of the contrast in appearance and dress between himself and the other subjects were found by the trial judge to have been true, this might well *270 warrant a finding by him that the lineup was unfair as "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification"  the applicable criterion of unfair identification procedures enunciated in Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); State v. Mars, 107 N.J. Super. 36, 39 (App. Div. 1969). See Wade, supra (388 U.S., at 232-233, 87 S.Ct. 1926); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Note, 69 Colum. L. Rev. 1296 (1969). The burden of proof on the issue of unfairness would rest on the State. Cf. State v. Franklin, 52 N.J. 386, 402-403 (1968). But determination would be posited on the totality of all the circumstances. State v. Mars, supra (107 N.J. Super., at 39).
In remanding, I would direct that in the event that the court on remand finds no unfairness in the totality of the pretrial identification procedures in respect of either identifying witness, the conviction should stand. But should the court find to the contrary it would be incumbent upon it to make a finding as to whether either of the in-court identifications was tainted. In this regard it would be for the State to demonstrate that there was "clear and convincing evidence" that the in-court identifications were independently based upon observations of the defendant at the time of the offense and not substantially contributed to by impressions gained from examining police photographs of the defendant or from seeing him at the lineup. Wade, supra (388 U.S., at 241, 87 S.Ct. 1926); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); People v. Caruso, 68 Cal.2d 183, 65 Cal. Rptr. 336, 436 P.2d 336 (Sup. Ct. 1968); People v. Ballott, 20 N.Y.2d 600, 286 N.Y.S.2d 1, 233 N.E.2d 103 (Ct. App. 1967); State v. Woodard, supra (102 N.J. Super., at 425). Should the court find taint of the in-court identification of either witness, under the aforestated criteria, and that the error in receiving such testimony was not harmless beyond a reasonable doubt *271 (Wade, supra, 388 U.S., at 242, 87 S.Ct. 1926; Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967)), the conviction would have to be set aside and a new trial awarded. Cf. Wright v. United States, 131 U.S. App. D.C. 279, 404 F.2d 1256 (1968).