**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1165-22
               A-1166-22

SOLVAY SPECIALTY
POLYMERS, LLC,

      Plaintiff-Appellant,

v.

DIRECTOR, DIVISION OF
TAXATION,

      Defendant-Respondent,

_____

SOLVAY SOLEXIS, INC.,

      Plaintiff-Appellant,

v.

DIRECTOR, DIVISION OF
TAXATION,

      Defendant-Respondent.

_____

Submitted February 5, 2024 — Decided February 14, 2024

Before Judges Sabatino and Mawla.

On appeal from the Tax Court of New Jersey, Docket Nos. 9365-2019 and 9366-2019.

Inglesino, Webster, Wyciskala & Taylor, LLC, attorneys for appellants (James Esposito and Joshua Sherwood Veith (Ryan Law Firm, PLLC), on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Sara M. Gregory, Assistant Attorney General, of counsel; Heather Lynn Anderson, Deputy Attorney General, on the briefs).

PER CURIAM

Plaintiffs Solvay Solexis, Inc. (Solexis) in A-1166-22, and Solvay Specialty Polymers, LLC (Polymers) in A-1165-22, appeal from a November 2, 2022 order and final judgment of the Tax Court, which granted them a partial refund of certain sales and use taxes (SUT) paid to the Division of Taxation (Division).[1] The Tax Court also denied plaintiffs' challenge to N.J.A.C. 18:2-5.8(d)(3) and (4), which requires taxpayers seeking an SUT refund provide certain proofs to the Division pursuant to N.J.S.A. 54:32B-20(a) of the Sales and Use Tax Act (SUT Act).[2] We affirm.

---

[1] We consolidate these appeals for purposes of this opinion.

[2] N.J.S.A. 54:32B-1 to -55.

In July 2015, plaintiffs filed refund claims with the Division for certain SUTs they paid for manufacturing equipment, repair parts, and supplies used in the production of chemicals. Solexis claimed a refund of $614,776.16—for the period of July 1, 2011 through October 31, 2012. Polymers claimed a refund of $938,622.82—for the period of January 1, 2012 through December 31, 2013.

Pursuant to its regulations, the Division required plaintiffs to complete Form A-3730 and provide a detailed explanation of the basis for the claimed SUT refunds, as well as supporting documentation to substantiate the claims. Plaintiffs provided the following documentation for the applicable refund periods: Systems, Applications, and Products data, Electronic Fund Transfer (EFT) Debit reports with Automated Clearing House (ACH) data, a sample of vendor confirmations and invoices stating sales tax was paid on purchases, and a general ledger containing reference numbers to bank statements to trace payments, and bank statements.

The Division denied plaintiffs' request for a refund because it could not determine that sales tax was actually paid to vendors on the transactions, or that use tax was accrued and remitted to the Division on the transactions if sales tax was not paid. Plaintiffs filed administrative protests. Solexis protested the

denial in the amount of $577,157.77 and Polymers in the amount of $901,992.51.

The Division conferee reviewed plaintiffs' submissions and certified that she accepted the proof of sales tax paid in all instances except: (1) where a vendor invoice showed a lump sum charge, which did not separate or identify taxable and non-taxable charges; (2) where the vendor invoice showed no sales tax was charged; or (3) where plaintiffs could not show, in an ACH or bank statement, that the invoice was paid. The conferee certified "no line items were denied simply because [p]laintiffs did not produce a bank statement or cancelled check." When the conferee was able to trace a vendor invoice to a payment on any of plaintiffs' financial documents, the Division accepted the document as proof of payment and granted the refund. However, most of plaintiffs' refund claims were denied because the Division could not determine what SUT was remitted to it.

The conferee explained the problem as follows:

> Plaintiffs accrued use tax on some items, and then took "credits" against the use tax accrued on some items and remitted the rest to [the Division] as use tax. However, [p]laintiffs could not reconcile the self-help credits they allegedly took against the total use tax accrued and the returns filed. That is, [p]laintiffs could not provide any detail on how they calculated the credits. Therefore, [the Division] could not determine if the line items

4

included in the refund claims were already credited against the use tax remitted. Plaintiffs admitted they could not determine what line items were included in the credits and, despite my numerous requests, never provided any information on how the credits were calculated.

Solexis's documentation showed it took a credit of $544,470.85 against a total accrued use tax of $987,227.90 but could only substantiate $172,099.76 of the credits. Therefore, the conferee concluded Solexis should have paid $815,128.14 in use tax ($987,227.90 - $172,099.76 = $815,128.14). However, Solexis had only paid $442,757.10 and "could not document or explain [the] difference."

Likewise, Polymers accrued use tax of $1,494,221.28, took credits of $656,583.24, and could only substantiate $470,107.10 of the credits. The conferee concluded Polymers should have paid $1,024,114.18, ($1,494,221.28 - $470,107.10 = $1,024,114.18). Instead, Polymers paid $837,637.88, leaving $186,476.30 that it could not document or explain.

On May 19, 2019, the Division issued its final determinations on both protests. It granted Solexis's request for a refund of $162,059.02 in use tax overpayments, and $3,659.09 in sales tax overpayments and offset the refund against $372,317.04 in use tax Solexis had accrued but did not pay. The

5

Division granted Polymers a $263,061.89 refund and offset the refund by $186,476.30 in unpaid tax.

Solexis and Polymers each filed a complaint with the Tax Court, challenging these final determinations. They argued they submitted sufficient proofs of payment, challenged the validity of N.J.A.C. 18:2-5.8(d)(3) and (4), and alleged certain purchases were exempt from SUTs. Each party moved for summary judgment. The Tax Court issued a detailed written opinion denying plaintiffs' motion and granting the Division's cross-motion on January 19, 2022.

The court rejected plaintiffs' challenge to N.J.A.C. 18:2-5.8(d), which they claimed added language to, or contradicted N.J.S.A. 54:32B-20(a), and thus was arbitrary and capricious. Regarding the Division's decision to offset plaintiffs' refund against use tax credits, the court held the Division could not "formally assess[] additional use tax" outside of the statute of limitations deadline in N.J.S.A. 54:32B-27. The court rejected the Division's assertion the offset did not constitute an additional assessment, holding "the allowance of an offset is tantamount to a reopening and audit of closed [tax] years." Allowing the collection of additional tax for years closed without an audit would conflict with N.J.S.A. 54:32B-27 and 54:49-6 and would "dissuade taxpayers from requesting a refund." Accordingly, the court held the Division properly denied

the refund, but could not offset the use tax credit based on an untimely additional use tax assessment.

The court found the regulations were not arbitrary or capricious because "the Legislature intended to grant the Director [of the Division of Taxation] rulemaking deference" by enacting N.J.S.A. 54:32B-20(a). The regulations did not contradict the statute by impermissibly limiting the documentation taxpayers can provide in seeking a refund because the regulations were structural guidelines and subject to review by the court.

I.

On appeal, plaintiffs argue they presented reliable evidence of the SUTs remitted to the Division, and the only issue was the evidence did not conform to the specific type of evidence required by the regulations. They claim N.J.A.C. 18:2-5.8(d)(3) works to limit the type of proofs the Division will accept to canceled checks or bank statements and grants the Division discretion to decide whether it will accept alternate forms of proof, leaving taxpayers with no recourse if the Division rejects otherwise valid proofs.

Plaintiffs claim N.J.A.C. 18:2-5.8(d)(4)'s requirement that refund claims "with [twenty-five] or more separate transactions" include a spreadsheet with specific identification information does not conform to modern business

A-1165-22

practices, which involve electronic purchases that are automatically recorded using resource planning software applications. They assert most businesses today do not pay vendors by check, and instead use EFT.

Plaintiffs assert N.J.S.A. 54:32B-20(a) does not authorize the Division to limit the documentation taxpayers can provide when they apply for a refund. Moreover, the Division exceeded the statute and its legislatively delegated authority because the regulations contradict N.J.S.A. 54:48-3, which requires it to "provide . . . a uniform procedure to be followed by taxpayers in relation to any state taxes and to afford uniform remedies and procedures . . . ."

Plaintiffs contend the regulations are arbitrary and capricious because they unreasonably "restrict taxpayers' ability to prove that tax was erroneously collected or paid." They point to N.J.A.C. 18:2-5.8(d)(3)(i), which requires that Form A-3730 "must be filed with documents, such as invoices, receipts, proof of payment of tax, and exemption certificates . . . ," and argue the regulation's use of the word "must" is unduly restrictive. They note other mandatory language in N.J.A.C. 18:2-5.8(d)(3)(iii)(1) that "[p]roof of sales tax remitted to sellers is required and the Division will accept copies of canceled checks." They also point to N.J.A.C. 18:2-5.8(d)(4), which states: "Refund claims of sales and

use tax with [twenty-five] or more separate transactions or credit memoranda must be filed with a computer spreadsheet."

Plaintiffs argue the requirement that a taxpayer provide a cancelled check or bank statement—even if the taxpayer paid electronically—is arbitrary and capricious. They assert the statute is more expansive than the regulations and does not prevent the Division from reviewing a particular category of documents to determine refund eligibility. Therefore, N.J.A.C. 18:2-5.8(d)(3) and (4) are not necessary to effectuate the statute because taxpayers already bear a high burden when they seek a refund, and the regulations make the burden heavier.

"An appellate court accords a highly deferential standard of review to tax court decisions." N.J. Tpk. Auth. v. Twp. of Monroe, 30 N.J. Tax 313, 318 (App. Div. 2017). We "will not disturb a tax court's findings 'unless they are plainly arbitrary or there is a lack of substantial evidence to support them' because '[t]he judges presiding in the Tax Court have special expertise.'" Ibid. (quoting Glenpointe Assocs. v. Teaneck, 241 N.J. Super. 37, 46 (App. Div. 1990)). However, we review a tax court's conclusions of law de novo. Ibid. (citing Toll Bros. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

II.

The Legislature enacted the SUT Act "to provide as far as feasible a uniform procedure to be followed by taxpayers in relation to any state taxes and to afford uniform remedies and procedures which may be resorted to by the state in the collection of any of its taxes."  N.J.S.A. 54:48-3.  To that end, N.J.S.A. 54:32B-20(a) empowers the Director to pay tax refunds on application of a taxpayer provided "the person shall first establish to the satisfaction of the [D]irector, under such regulations as the [D]irector may prescribe, that the person has repaid to the customer the amount for which the application for refund is made."

N.J.S.A. 54:49-14(a) states:  "Any taxpayer . . . may file with the [D]irector a claim under oath for refund, in such form as the [D]irector may prescribe . . . ."  N.J.S.A. 54:32B-24 provides in pertinent part:

> [T]he [D]irector . . . is hereby authorized and empowered . . . [t]o make, adopt and amend rules and regulations appropriate to the carrying out of this act and the purposes thereof . . . [and t]o require any person required to collect tax to keep detailed records of all receipts, amusement charges, or rents received, charged or accrued, including those claimed to be nontaxable, and also of the nature, type, value and amount of all purchases, sales, services rendered, admissions, occupancies, names and addresses of customers, and other facts relevant in determining the amount of tax due and to furnish such information upon request to the [D]irector . . . .

A-1165-22

It is well-established "the [L]egislature may delegate to an administrative agency the authority to promulgate rules and regulations interpreting and implementing a statute . . . ." T.H. v. Div. of Developmental Disabilities, 189 N.J. 478, 490 (2007). However, an administrative agency's power to promulgate regulations "may not, under the guise of interpretation, extend a statute to give it a greater effect than its language permits." GE Solid State, Inc. v. Dir., Div. of Tax'n, 132 N.J. 298, 306 (1993) (citing Kingsley v. Hawthorne Fabrics Inc., 41 N.J. 521, 528 (1964)). Regulations that "flout the statutory language and undermine the intent of the Legislature" are invalid. Ibid.

Here, as the Tax Court aptly noted, the governing statute "utilizes discretionary language and purposefully lacks any restrictive terminology." Deriving from the statute's broad language, the Division promulgated N.J.A.C. 18:2-5.8(d)(3), which requires "[r]efund claims of sales and use tax must include documentation of all transactions to substantiate the tangible personal property or service that is the subject of the refund claim and the amount requested." As a result, taxpayers must file form A-3730 and include "documents, such as invoices, receipts, proof of payment of tax, and exemption certificates." N.J.A.C. 18:2-5.8(d)(3)(i). The portion of the regulation plaintiffs object to states:

Proof of sales tax remitted to sellers is required and the Division will accept copies of canceled checks. If payment was made electronically, the Division will accept copies of bank statements with an itemization of all the transactions that make up the electronic payment. A request for use of an alternative proof of payment must be requested in writing to the [SUT] [r]efund [s]ection and written approval received by the claimant prior to submission of such alternative proof of tax payment in support of the refund claim. Any approved alternate proof of payment must provide a trail between the documents presented by use of notation, highlighting, or other identification of the particular matching transactions.

[N.J.A.C. 18:2-5.8(d)(3)(iii)(1).]

Additionally, plaintiffs object to N.J.A.C. 18:2-5.8(d)(4), which states:

Refund claims of sales and use tax with [twenty-five] or more separate transactions or credit memoranda must be filed with a computer spreadsheet. A computer spreadsheet is a computer program that arranges numerical and textual data into a table of rows and columns. The computer spreadsheet must display information for each transaction that is included as the subject of the refund claim.

We reject plaintiffs' arguments these regulations should be invalidated because they do not comport with modern business practices or promote uniform remedies and procedures for refunds required by N.J.S.A. 54:48-3, and constrict the legislative intent behind N.J.S.A. 54:32B-20(a). As the Tax Court found, N.J.S.A. 54:32B-20(a) "is silent as to any documentation requirements and

leaves the Director with the power to address this [issue]. Therefore, the [regulations] do not contradict" the statute. As the conferee noted and the Tax Court correctly found, the "regulations . . . provide taxpayers with a structured procedure for SUT refunds[,] . . . lay[ing] out what documentation is acceptable and how to prove payment of remitted SUT." Contrary to plaintiffs' arguments, the regulations are flexible and do not work against the statute. They do not limit taxpayer proofs to canceled checks. The regulations expressly permit a taxpayer to submit "alternative proof."

Our Supreme Court has stated there are instances where "literalism must be avoided because '[t]here is no surer way to misread any document than to read it literally.'" McNeil v. Legis. Apportionment Comm'n, 177 N.J. 364, 374 (2003) (quoting Guiseppi v. Walling, 144 F.2d 608, 624 (2d Cir.1944) (Hand, J., concurring), aff'd sub nom., Gemsco, Inc. v. Walling, 324 U.S. 244 (1945)). Plaintiffs read the regulations in an overly literal manner and ignore the meaning of their plain language.

Although plaintiffs aver this dispute is about unlawful regulations, a review of the record shows the total refunds were denied because of the insufficiency of the proofs presented. As the conferee noted, plaintiffs' proofs "failed to reconcile its use tax accruals to its use tax remittances." This was

13

essential for the Division to understand "what items are included in the credits [p]laintiffs applied to calculate the reported use tax due." Without the reconciliation the Division could not "determine whether the line items for which [p]laintiffs s[ought] a refund were already included in the credits against tax remitted."

The Division's response to the proofs plaintiffs submitted not only shows where plaintiffs fell short but reinforces our conclusion the Division neither limited the types of proofs plaintiff could submit, nor violated the Legislature's directive in N.J.S.A. 54:48-3 to afford a ready means for taxpayers to obtain refunds. The Division's response was neither a mistake of law or fact, and the Tax Court's conclusion plaintiffs failed to show the regulations were unreasonable, arbitrary, or capricious was sound. To the extent we have not addressed an argument raised on appeal it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in A-1165-22 and A-1166-22.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION